IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| VIRGINIA AND ARNOLD MILTON, § <br> ON BEHALF OF THEMSELVES § <br> AND ALL OTHER SIMILARLY § <br> SITUATED PERSONS, § <br> § <br> PLAINTIFFS § <br> v. § <br> § <br> UNITED STATES OF AMERICA and § <br> UNITED STATES ARMY CORPS OF § <br> ENGINEERS, § <br> § <br> DEFENDANTS. § | FILED <br><br> Sept 12 2017 <br><br> U.S. COURT OF <br> FEDERAL CLAIMS <br><br> CASE NO. 17-1235L |

## CLASS ACTION COMPLAINT

Plaintiffs Virginia and Arnold Milton, on behalf of themselves and all similarly situated persons and entities (the "Class Members"), complain of the actions of the United States of America and the United States Army Corps of Engineers (together, the "Government"), and respectfully show the following:

## NATURE OF THE CASE

**1.** This is a class action against the Government for just compensation for the wrongful taking of Plaintiffs' and Class Members' property in violation of the takings clause of the Fifth Amendment to the United States Constitution.

**2.** The U.S. Army Corps of Engineers (the Corps) owns and operates the Addicks and Barker reservoirs, which were built in the 1940s to protect against flooding in downtown Houston, Texas and the Houston Ship Channel. The taking commenced on or about August 28, 2017, when the Government intentionally opened the Addicks and Barker reservoirs to release Hurricane Harvey rain water thereby flooding Buffalo Bayou out of its banks, which inundated, destroyed,

damaged and/or devalued Plaintiffs' and Class Members' homes, businesses, buildings, structures, equipment, real, and personal property located downstream from the reservoirs along Buffalo Bayou, including but not limited to, the following Houston neighborhoods:

1. Arcadia
2. Arcadia Court
3. Barkers Crossing
4. Barkers Ranch
5. Bear Creek Central
6. Bear Creek Estates
7. Bear Creek Farms
8. Bear Creek Trails
9. Bear Creek Village
10. Bear Creek West
11. Bradford Colony
12. Briargrove Park
13. Charlestown Colony
14. Cinco Ranch Equestrian Village
15. Clay Hill Park
16. Clay Hills Plaza
17. Clay Meadows
18. Concord Bridge
19. Concord Bridge North
20. Concord Colony
21. Cypress Park
22. Eldridge Park
23. Estates at Cullen Park
24. Estates of Baker Lane
25. Fieste Park at Bear Creek Village
26. Flagstone Estates
27. Fleetwood
28. Forresta Village
29. Georgetown Colony
30. Glencairn
31. Glencairn Park
32. Glencairn South
33. Green Trails
34. Green Trails Crossing
35. Green Trails Forest

36. Green Trails Oaks
37. Green Trails Park
38. Green Trails Village
39. Hearthstone Place
40. Heatherwood Park
41. Highland Trails
42. Jamestown Colony
43. Kelliwood
44. Kelliwood Enclave
45. Kelliwood Gardens
46. Kelliwood Lakes
47. Kelliwood Place
48. Kelliwood in Nottingham Country
49. Kelliwood Trails
50. Kingsland Acres
51. Kingsland Estates
52. Krystal Lake Estates
53. Lake Forest of Kelliwood
54. Lake Harbor
55. Lakes of Buckingham
56. Lakes of Buckingham Kelliwood
57. Lakes of Eldridge North
58. Lakes of Pine Forest
59. Lakes on Eldridge
60. Landing at Park Harbor
61. Langham Creek Colony
62. Mayde Creek Farms
63. Memorial Parkway
64. Memorial Parkway Village
65. Nottingham Country
66. Oak Park Trails
67. Park Harbor
68. Park Harbor Estates
69. Park Harbor Oaks
70. Park Place Center
71. Parklake Village
72. Parkview At Barker Cypress
73. Pine Forest Green
74. Pine Forest Landing
75. Pine Forest Village

76. Piney Point Village
77. Ranch at Barker Cypress
78. Ricefield Village
79. Savannah Estates
80. Stonelodge
81. Timber Creek Place
82. Twin Lakes
83. University Park West
84. Villages at Lakepoint
85. West Side Forest
86. Westgreen Park
87. Westlake
88. Westlake Forest
89. Westlake Place
90. Westside Business Park
91. Willow Park Greens
92. Windsor Park Estates
93. Windsor Park Lakes
94. Yorktown Crossing

3. For its benefit and the benefit of certain interests and areas upstream and surrounding the reservoirs, the Government released water held in the reservoirs and, in the process, took Plaintiffs' and Class Members' rights to use and enjoy their property and businesses. This inundation of, destruction of, substantial damage to and/or devaluation of Plaintiffs' and Class Members' property and businesses directly resulting from the intentional release of water from the reservoirs into Buffalo Bayou constituted a taking including, but not limited to, the destruction of Plaintiffs' and Class Members' homes, businesses, and other property by the Government without just compensation in violation of the takings clause of the Fifth Amendment to the United States Constitution.

4. Beginning on or about August 28, 2017, controlled releases of stormwater from Addicks and Barker reservoirs into Buffalo Bayou, at a combined total of approximately 13,300

cubic feet per second, was planned by the U.S. Army Corps of Engineers. Accordingly, the City of Houston issued a mandatory evacuation for residents living in the impacted areas downstream along Buffalo Bayou. Releases were expected to continue through the second week of September 2017 from the reservoirs into Buffalo Bayou as the Corps sought to lower water levels in both reservoirs. Some 3,000 homes near Addicks reservoir and 1,000 homes near Barker were inundated due to water release. Hundreds, if not thousands, of additional homes located along Buffalo Bayou were also inundated due to water release.

**5.** The inundation of, destruction of, substantial damage to and/or devaluation of Plaintiffs' and Class Members' homes, businesses, buildings, structures, equipment, and other real and personal property was the natural, direct and probable consequence of the Government releasing flood water from the reservoirs into Buffalo Bayou on or about August–September 2017.

**6.** Plaintiffs, on behalf of themselves and the Class Members, seek to recover just compensation in an amount to be determined at trial, pre- and post-judgment interest at the highest legal rates, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

**7.** This action arises under the takings clause of the Fifth Amendment to the United States Constitution. Plaintiffs, on behalf of themselves and the Class Members, seek, *inter alia*, just compensation well in excess of $10,000 USD. This Court, therefore, has jurisdiction over this matter pursuant to 28 U.S.C. § 1491(a)(1) (*i.e.*, the "Big Tucker" Act).

## PARTIES

**8.** Plaintiffs Arnold Milton and Virginia Milton, are individuals and real property owners, who are citizens of the State of Texas. They are residents of Houston, Harris County,

Texas, and the owners of the real property located at 850 Silvergate Drive, Houston, Texas 77079-5068, which was inundated, destroyed, substantially damaged and/or devalued as a direct result of the Government's intentional release of flood water from the reservoirs into Buffalo Bayou on or about August–September 2017.

9. The Government, as defined in this Class Action Complaint, includes the United States of America and the United States Army Corps of Engineers, an agency of the United States of America.

### FACTS

### ADDICKS AND BARKER RESERVOIRS

10. The Addicks and Barker reservoirs are located near the intersection of Interstate 10 and Texas State Highway 6, in an area considered to be in the upper "watershed" of Buffalo Bayou. They provide flood damage reduction along Buffalo Bayou downstream of the reservoirs and through the center of the City of Houston.

11. The reservoirs are designed to connect Houston's watersheds and bayous that traverse the region and lead to Galveston Bay and the Gulf of Mexico.

12. The Addicks Reservoir is North of Interstate 10, and is fed by Bear Creek, South Mayde Creek, Langham Creek and Horsepen Creek. Water then flows outward to Langham Creek and Buffalo Bayou.

13. The Barker Reservoir is South of Interstate 10, and is fed by Mason Creek and upper Buffalo Bayou from the Katy Prairie, its origin. The bayou then continues toward downtown Houston.

14. The reservoirs have three main structural components. There are earthen embankments, which are the highest walls.  The embankments are 121 feet high at Addicks and

112 feet high at Barker. Each reservoir also has a "gated water control structure," or flood gate. Additionally, each reservoir has two "auxiliary spillways." The spillways at Addicks are 111.5 feet high, 105 feet high at Barker. They are engineered to back up the gated structures by keeping water from going over the top or "overtopping" the embankments.

15. The Army Corps of Engineers has the primary responsibility for land management, management and operation of the dams, and the course of water flows. As early as 2016, the Corps knew that in the event of a hurricane or tropical storm with a very large rainfall, the reservoir dams—as they were constructed and maintained—would require the release of water on the scale of that, which occurred in August – September 2017. In 2009, the Corps rated the Addicks and Barker reservoir dams among the nation's six (6) most unsafe dams.

16. The Corps directed other government agencies and instrumentalities to carry out its wishes with the respect to its decisions. The Harris County Flood Control District specifically disclaims responsibility for land and dam management and course of water flows on its website. *See* www.hcfcd.org/hurricane-harvey/flooding-impacts-in-connection-with-the-reservoirs/

## FLOODING CAUSED BY OPENING THE RESERVOIRS

17. Pools behind the Addicks and Barker reservoirs began rising on August 25, in response to rainfall over the upstream watersheds. Reservoir pools rise when the stormwater inflow rate exceeds the stormwater release rate. When the reservoir gates are closed, no stormwater is released.

18. The U.S. Army Corps of Engineers initiated stormwater releases from the reservoirs on August 28. The reservoir gates were opened on August 28, releasing stormwater into Buffalo Bayou. Reservoir pools continued to rise due to tremendous inflow rates from bayous draining into the reservoir. The reservoir levels peaked on Aug. 30 at 109 feet at Addicks and 101.5 at Barker.

**19.** Streets and homes downstream of the reservoirs flood when the combined release rate from the reservoirs exceeds approximately 4,000 cubic feet per second. Approximately 3,000 homes near Addicks reservoir and 1,000 homes near Barker were inundated due to the water release. Additional homes located a long Buffalo Bayou were inundated due to the water release.

**20.** The Corps' decision to take control of the flowage easements over private home and business property and make "unexpected controlled releases" was knowing and intentional. At the time the decision was made, it was foreseeable and the Corps knew, or should have known, that it was sacrificing and condemning thousands of homes in the vicinity of Addicks and Barker reservoirs, and along Buffalo Bayou, including the real property, their contents, and their future property values.

**21.** The water releases by the Corps fed into Buffalo Bayou at the rate of 13,000 cubic feet per second or more. This directly impacted areas around Buffalo Bayou raising water levels two (2) feet or more in less than a day and directly causing additional flooding for thousands of homes and businesses, including the home of the named Plaintiffs and their neighbors

**22.** The decision by the Corps have also potentially altered the course of Buffalo Bayou in such a manner that future flooding will be more likely in areas not previously subject to flooding, leading to further business interruptions and losses in home value and tax revenue.

**23.** The Corps decision or its impact could not have been anticipated or mitigated by the affected homeowners or business owners, as none were in a so-called flood plain and none had experienced flooding in recent history. Further, many of these homes were without power during the time-period in which the Corps made their decision to release the dams.

24. Many if not most of the homeowners along Buffalo Bayou did not have flood insurance in areas not required by their mortgage companies. Even if the home and business owners did, much of the damage experienced, including the diminution in value to their properties will not be covered.

25. The extensive and widespread destruction of, substantial damage to and/or devaluation of Plaintiffs' and Class Members' homes, businesses, structures, equipment, oil and other real and personal property was the natural, direct, reasonably foreseeable, and probable consequence of the Government intentionally opening the Addicks and Barker reservoirs to release Hurricane Harvey rain water beginning on or about August 28, 2017.

## CLASS ACTION ALLEGATIONS

26. The preceding factual statements and allegations are incorporated herein by reference.

27. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Rules of the Court of Federal Claims. Plaintiffs seek to represent a class consisting of:

> All persons and entities who owned and/or leased real or personal property and/or who owned businesses located in the vicinity of the Addicks Reservoir or Barker Reservoir or Buffalo Bayou, that were flooded, destroyed, damaged and/or devalued by flood waters, when the Government intentionally opened the Addicks and Barker reservoirs to release Hurricane Harvey rain water beginning on or about August 28, 2017.

Excluded from the Class are the Government and its personnel, the Court and Court personnel.

28. This action is properly brought as a class action because Class Members are so numerous that joinder of all of them is impracticable. Class Members are dispersed throughout the greater Houston, Texas Area. While the exact number and identity of Class Members is unknown to Plaintiffs at this time, and may only be ascertained via discovery, on information and belief, the Class includes more than 4,000 persons and entities.

**29.** This action also is properly brought as a class action because certain common questions of law or fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members, including, *inter alia*:

    (a) whether the inundation, destruction, damage and/or devaluation of Plaintiffs' and Class Members' homes, businesses, buildings, structures, equipment, and other real and personal property by the flood water when the Government intentionally opened the Addicks and Barker reservoirs to release Hurricane Harvey rain water beginning on or about August 28, 2017, constitutes an unconstitutional taking of Plaintiffs' and Class Members' property by the Government without just compensation;

    (b) whether the inundation, destruction, damage and/or devaluation of Plaintiffs' and Class Members' homes, businesses, buildings, structures, equipment, and other real and personal property by the flood water when the Government intentionally opened the Addicks and Barker reservoirs to release Hurricane Harvey rain water beginning on or about August 28, 2017, constitutes the taking of, or exceeds the scope of, and/or expands the flowage easements over Plaintiffs' and Class Members' property without just compensation;

    (c) whether by intentionally opening the Addicks and Barker reservoirs to release Hurricane Harvey rain water beginning on or about August 28, 2017, and inundating, destroying, damaging and/or devaluing Plaintiffs' and Class Members' property and businesses, the Government's actions caused a taking of Plaintiffs' and Class Members' constitutionally protected property interests without just compensation;

    (d) whether the inundation, destruction, damage and/or devaluation of Plaintiffs' and Class Members' homes, businesses, buildings, structures, equipment, and other real and personal was the natural, probable and reasonably foreseeable consequence of the Government intentionally opening the Addicks and Barker reservoirs to release Hurricane Harvey rain water beginning on or about August 28, 2017;

    (e) whether the inundation, destruction, damage and/or devaluation of Plaintiffs' and Class Members' homes, businesses, buildings, structures, equipment, and other real and personal property by the flood water released from the Addicks and Barker reservoirs beginning on or about August 28, 2017, without just compensation violated the takings clause of the Fifth Amendment to the United States Constitution;

    (f) whether the inundation of Plaintiffs' and Class Members' homes, businesses, buildings, structures, equipment, and other real and personal property directly resulted in the destruction of, substantial damage to and/or devaluation of such

> homes, businesses, buildings, structures, equipment, and other real and personal property; and
>
> (g) the proper measure of the just compensation or other appropriate relief for Plaintiffs' and Class Members for which the Government is liable.

The only question affecting individual Class Members is the precise amount to which each Class Member is entitled as just compensation for the Government's wrongful actions.

30.  Plaintiffs' claims are typical of the Class Members' claims and do not conflict with the interests of any of the other Class Members. Plaintiffs and Class Members were inundated by the flood water unleashed by the Government when it opened the Addicks and Barker reservoirs to release Hurricane Harvey rain water beginning on or about August 28, 2017, in the same manner. The relief Plaintiffs seek is common to the relief required by the Class Members.

31.  The Class Members' interests will be fairly and adequately protected by Plaintiffs, whose interests are consistent with Class Members' interests. Plaintiffs are represented by competent, able and committed counsel knowledgeable about, and experienced in, conducting class action litigation, and complex multi-Plaintiffs litigation.

32.  Plaintiffs' interests are not antagonistic to, or in conflict with, the interests they seeks to represent.  Plaintiffs knows of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

33.  Class certification, therefore, is appropriate under Rule 23 of the Rules of the United States Court of Federal Claims because (i) the Government has acted or refused to act on grounds generally applicable to the Class, and (ii) common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CAUSE OF ACTION

### COUNT I

### VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

34. The preceding factual statements and allegations are incorporated by reference.

35. For its benefit and the benefit of particular interests and areas—most notably, large down-reservoir residential and urban areas along Buffalo Bayou—the Government intentionally released significant rain water from the Addicks and Barker reservoirs beginning on or about August 28, 2017, and in the process, caused a taking of Plaintiffs' and Class Members' rights to use and enjoy their property and businesses. The inundation of, destruction of, substantial damage to and/or devaluation of Plaintiffs' and Class Members' property and businesses directly resulting from the Government's opening of the Addicks and Barker reservoirs to release Hurricane Harvey rain water beginning on or about August 28, 2017, and continuing into September 2017, caused a temporary invasion and taking of Plaintiffs' and Class Members' property and businesses by the Government, with devastating consequences to constitutionally protected property interests, without just compensation in violation of the takings clause of the Fifth Amendment to the United States Constitution.

36. In addition, the Government's permanent and long term flood control program, which enables it to open the Addicks and Barker reservoirs at its discretion, further demonstrates and confirms the Government's permanent commitment to the intermittent, but recurring, flooding of Plaintiffs' and Class Members' property and businesses, should extreme flood events occur again. The Addicks and Barker reservoirs are opened during extreme flood events for the very purpose of releasing massive amounts of water into Buffalo Bayou to protect against flooding in

downtown Houston, Texas and the Houston Ship Channel. Thus, by definition, each time there is an extreme flood event and the Addicks and Barker reservoirs are opened, Buffalo Bayou—and the property and businesses located within close proximity to Buffalo Bayou—inevitably will be flooded.

37. Pursuant to the Government's permanent and long term flood control program, which is carried out by the United States Army Corps of Engineers, the Government took, exceeded the scope of, and/or expanded flowage easements, if any, over Plaintiffs' and Class Members' property without just compensation by intentionally opening the Addicks and Barker reservoirs to release Hurricane Harvey rain water thereby flooding Buffalo Bayou out of its banks on or about August 28, 2017, and continuing into September 2017 thereafter, and inundating, destroying, damaging and/or devaluing Plaintiffs' and Class Members' property and businesses—in violation of the takings clause of the Fifth Amendment to the United States Constitution.

38. By opening the Addicks and Barker reservoirs to release Hurricane Harvey rain water thereby flooding Buffalo Bayou out of its banks on or about August 28, 2017, and continuing into September 2017, and inundating, destroying, damaging and/or devaluing Plaintiffs' and Class Members' property and businesses, the Government took Plaintiffs' and Class Members' property, including but not limited to, destroying homes and businesses, without paying just compensation in violation of the takings clause of the Fifth Amendment to the United States Constitution.

39. The inundation, destruction of, substantial damage to and/or devaluation of Plaintiffs' and Class Members' homes, businesses, buildings, structures, equipment, and other real and personal property was the natural, direct, foreseeable, and probable consequence of the Government intentionally opening the Addicks and Barker reservoirs to release Hurricane Harvey

rain water thereby flooding Buffalo Bayou out of its banks on or about August 28, 2017, and continuing into September 2017.

40. As is common in cases of government-induced flooding that unconstitutionally takes and destroys property, the Government's taking is temporary because the flooding itself does not continue permanently. But the consequences of the flooding includes the permanent destruction and loss of property, including homes and businesses.

41. In the alternative, and to the extent flowage easements exist over any of Plaintiffs' or Class Members' property, they were acquired by the Government for value far below the value of the property taken by the Government so as to be inequitable because the easements have subsumed the servient tenements.

## RELIEF REQUESTED

42. The preceding factual statements and allegations are incorporated herein by reference.

43. **COMPENSATION.** As a direct result of (i) the inundation of, destruction of, substantial damage to and/or devaluation of Plaintiffs' and Class Members' property and businesses by the Government's opening the Addicks and Barker reservoirs to release Hurricane Harvey rain water thereby flooding Buffalo Bayou out of its banks on or about August 28, 2017, and continuing into September 2017 thereafter, and (ii) the Government temporarily taking, exceeding and/or expanding flowage easements over Plaintiffs' and Class Members' property, with devastating consequences to the property interests of Plaintiffs and Class Members, the Plaintiffs and Class Members are entitled to recover just compensation and such other appropriate relief as the Court deems just and proper in an amount to be determined by the trier of fact. The losses sustained by Plaintiffs and Class Members were, or should have been, reasonably

foreseeable by the Government.  All conditions precedent to Plaintiffs' and Class Members' claims for relief have been performed and/or occurred.

**44.    ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS.**  Plaintiffs and Class Members also are entitled to recover their reasonable and necessary attorneys' fees, litigation expenses and court costs in prosecuting this action pursuant to, *inter alia*, Rule 23(h) of the Rules of the United States Court of Federal Claims.

**WHEREFORE,** Plaintiffs, on behalf of themselves and the Class Members, respectfully request that (i) the Government be cited to appear and answer this lawsuit, (ii) this action be certified as a class action, (iii) Plaintiffs be designated the Class Representative, and (iv) Plaintiffs' counsel appointed as Class counsel.  Plaintiffs, on behalf of themselves and the Class Members, further request that upon final trial or hearing, judgment be awarded against the Government for:

(i)     just compensation in an amount to be determined by the trier of fact;

(ii)    pre- and post-judgment interest at the highest legal rates;

(iii)   reasonable and necessary attorneys' fees and litigation expenses;

(iv)   costs of suit; and

(v)    such other and further relief to which Plaintiffs and Class Members are justly entitled.

Date:  September 12, 2017.

                                          Respectfully submitted,

                                          By:_____*s/ Rand P. Nolen*_____
                                          **FLEMING, NOLEN & JEZ, L.L.P.**
                                          Rand P. Nolen
                                          Texas State Bar No. 00788126
                                          George M. Fleming
                                          Texas State Bar No. 07123000

2800 Post Oak Blvd., Suite 4000
Houston, Texas 77056-3019
Telephone (713) 621-7944
Fax (713) 621-9638
rand_nolen@fleming-law.com

**ATTORNEYS FOR PLAINTIFFS AND THE PUTATIVE CLASSES**